## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

SALLIE HOCK,
JASON MCCLANAHAN,
CLIFFORD J. FROST, and
DARRELL VICKERS,

      Plaintiffs,

      v.

SONJA BUFFA, in her official capacity as
Warren City Clerk and WARREN CITY
ELECTION COMMISSION, an agency of
a Michigan municipal corporation

      Defendants, and

Connor Berdy,

      Defendant-Intervenor.

Case No. 2:19-cv-11785-MOB-RSW
Hon. Marianne O. Battani

---

THE MIKE COX LAW FIRM, PLLC
Michael A. Cox (P43039)
Attorney for Plaintiffs
17430 Laurel Park Drive North, Suite 120E
Livonia, MI 48152
(O) (734) 591-4002
(F) (734) 591-4006
mc@mikecoxlaw.com

JIM KELLY LAW, PC
James J. Kelly (P72111)
Attorney for Defendant-Intervenor Berdy
30300 Northwestern Hwy, Suite 324
Farmington Hills, MI 48334
(O) (248) 449-4444
(F) (844) 722-9161
Jim@JimKellyLaw.com

BERRY MOORMAN P.C
Mark E. Straetmans (P29158)
Attorneys for Def Buffa and
Warren City Election Commission
535 Griswold, Suite 1900
Detroit, MI 48226
(O) (313) 492-1200
(F) (313) 496-1300
mstraetmans@berrymoorman.com

---

## DEFENDANT-INTERVENOR CONNOR BERDY'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION

Now comes Defendant-Intervenor, Connor Berdy, through counsel, Jim Kelly Law, PC, and, for his Response to Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction, states:

Concurrence having been sought and not obtained under E.D. Mich. L. R. 7.1, the Emergency Motion should be denied for the reasons set forth in the accompanying Brief in Support of this Response and because:

1.     Ballots for the primary election have been printed. The case is moot.

2.     Defendants may file a motion for reconsideration with the State Supreme Court. The case is not yet ripe for review.

3.     When the case becomes ripe, it will be barred by res judicata.

4.     The case itself lacks merit. Term limits in State and local offices do not implicate rights under the First and Fourteenth Amendments. *Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998).

Wherefore, Defendant-Intervenor Connor Berdy respectfully requests that this Court deny Plaintiffs' Emergency Motion and enter an order dismissing this case for lack of jurisdiction and as moot.

JIM KELLY LAW, PC

 /s/ James J. Kelly
James J. Kelly (P72111)
Attorneys for Def-Intervenor Berdy
30300 Northwestern Hwy, Ste 324
Farmington Hills, MI 48334
(248) 449-4444

Dated: June 18, 2018

2

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

SALLIE HOCK,
JASON MCCLANAHAN,
CLIFFORD J. FROST, and
DARRELL VICKERS,

      Plaintiffs,

      v.

SONJA BUFFA, in her official capacity as
Warren City Clerk and WARREN CITY
ELECTION COMMISSION, an agency of
a Michigan municipal corporation

      Defendants, and

Connor Berdy,

      Defendant-Intervenor.

Case No. 2:19-cv-11785-MOB-RSW
Hon. Marianne O. Battani

---

THE MIKE COX LAW FIRM, PLLC
Michael A. Cox (P43039)
Attorney for Plaintiffs
17430 Laurel Park Drive North, Suite 120E
Livonia, MI 48152
(O) (734) 591-4002
(F) (734) 591-4006
mc@mikecoxlaw.com

JIM KELLY LAW, PC
James J. Kelly (P72111)
Attorney for Defendant-Intervenor Berdy
30300 Northwestern Hwy, Suite 324
Farmington Hills, MI 48334
(O) (248) 449-4444
(F) (844) 722-9161
Jim@JimKellyLaw.com

BERRY MOORMAN P.C
Mark E. Straetmans (P29158)
Attorneys for Def Buffa and
Warren City Election Commission
535 Griswold, Suite 1900
Detroit, MI 48226
(O) (313) 492-1200
(F) (313) 496-1300
mstraetmans@berrymoorman.com

---

## BRIEF IN SUPPORT OF DEFENDANT-INTERVENOR CONNOR
## BERDY'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION

## <u>Counter-Statement of Issues Presented</u>

1.    The Macomb County Election Commission has already approved the ballots for the August 2019 primary, and the County Clerk has already sent them to be printed when the case was filed. Those entities are not named as parties in this case. Further, Defendant-Intervenor learned minutes before filing this Response that ballots have already been printed and delivered to the City Clerk. When an order from this Court cannot grant the relief requested by the moving party, even if the moving party showed it was entitled to that relief, is the case moot?

    Defendant-Intervenor Connor Berdy answers:        Yes.

2.    When a prior State Court judgment was vigorously defended by the admitted political associates of the Plaintiffs, does that judgment bar this lawsuit under res judicata?

    Defendant-Intervenor Connor Berdy answers:        Yes.

3.    Is it appropriate to deny a motion for injunctive relief and dismiss the case when the merits of the case have already been decided by the Sixth Circuit and the only harm alleged is not legally recognizable?

    Defendant-Intervenor Connor Berdy answers:        Yes.

## **Controlling or Most Appropriate Authority for the Relief Sought**

*Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir. 1998)

## Introduction

This case tries to find a federal question in a local city charter that disqualifies local city council members from seeking election to a local city office through imposition of locally-approved term limits. Simply put, there is no federal right to vote to a term-limited candidate for local office. Injunctive relief should be denied, and this case should be dismissed. *Citizens for Legislative Choice v Miller* is dispositive of all the issues in this case. Under *Miller*, local term limits do not implicate federal constitutional rights.

Further, this case is moot. Ballots for this local election were approved by the County Election Commission and sent to the printer when this case was filed. Plaintiffs failed to join any County officials as parties to this case. Further, Defendant-Intervenor learned minutes before filing this Response that ballots have already been printed. Even if the Court granted the relief Plaintiffs requested, that order would not be sufficient to place the term-limited incumbents back on the ballot. This Court should not engage in an exercise in futility.

The case is also barred by res judicata. Plaintiffs request the exact same relief sought in *Berdy v Buffa*.

## Statement of Facts

**A.    The Warren City Charter applies term limits of 3 terms or 12 years to the office of city council.**

As a home rule city, the City of Warren is governed by a locally-drafted city

charter approved by the voters. Over the past 25 years, the citizens of Warren have amended their city charter several times to adjust and regulate their city council and other aspects of their city government. Notably, the voters adopted an amendment that provided for term limits, a separate amendment that reduced the size of the city council and provided that most of its members would be elected by district instead of at-large, and another amendment that adjusted the application of term limits.

Before 1998, the city council consisted of 9 members elected in one ward that corresponded to the entire city. In 1998, the city charter was amended to provide for term limits of 3 years or 12 years on the position of city council and the other elected city offices, beginning with and after the 1995 city election. The term limits are codified in Sections 4.3 and 4.4 of the city charter.[1] Term limits are consistent with the Home Rule City Act, which requires that a city charter set forth the qualifications of a city's legislative body and other officers.[2]

In 2010, the voters amended the charter to reduce the council from 9 members to 7 members. That amendment also provided that only 2 members were to be elected by the city at-large. The other 5 of the 7 members were each to be elected from single-member districts.[3]

---

[1]**Dkt 1-10** – Relevant Sections of the Warren City Charter at §4.3(d) and §4.4(d).
[2]MCL 117.3(d).
[3]See **Dkt 1-10** at §5.1(a) and **Dkt 1-18** – *Berdy v Buffa* Macomb County Circuit Court Opinion and Order May 31, 2019.

In a legal opinion dated December 26, 2014, the City Attorney opined the city council is a bicameral legislature.[4] That premise lead the city attorney to further opine that members of the city council could serve up to 12 years as a member of the city council elected at-large, and up to an additional 12 years as a member elected by district, for a total of 24 years in the office of city council.[5]

The 2010 charter amendments were silent as to term limits and cannot be read to mean that the voters intended to allow council members to serve a total of 24 years. The City Attorney's opinion simply concluded that a bicameral legislature is "a legislative body made up of two groups" and cited no authority. In fact, the Warren City Council is not a bicameral legislature, and the Michigan Supreme Court held the Warren Charter provides for a single class of city council members, subject to the term limits of the greater of three complete terms or 12 years in that office.[6]

In 2016, the voters amended Sections 4.3(d) and 4.4(d) of the city charter to extend the Mayor's term limits to the greater of 5 complete terms or 20 years in office and to count all years of service in city elective office, not just those years or terms after 1995, by striking the following sentence from Sections 4.3(d) and 4.4(d): "This provision shall be applied to commence with the term of office that took effect after the election on November 7, 1995." As a result of the 2016 amendment all years

---

[4]**Dkt 1-14** – Legal Opinion.
[5]*Id.*
[6]**Dkt. 1-24** – Berdy v Buffa _ Mich. _, _ N.W.2d _ (June 11, 2019).

and terms served prior to 1995 are subject to the term limit provisions and included when applying term limits.[7]

After the 2016 charter amendment, members of the city council members are not eligible to hold the office of city council for more than 3 terms or 12 years regardless of whether those years or terms were served before or after 1995.

## B. Defendants certified 4 candidates for the office of city council even though they are ineligible for election. They have already served the maximum amount of time.

The filing deadline for city offices for the 2019 city elections was April 23, 2019, and the withdrawal deadline was April 26, 2019. Candidates for city offices filed their candidacy with Defendant Buffa in her capacity as Warren City Clerk. After the withdrawal deadline, the Defendant City Clerk declared a number of candidates "not certified" for city office.

The candidate list prepared by the Warren City Clerk was delivered to the County Clerk and published on the Macomb County website on April 26, 2019.[8] The Warren City Clerk declared the following candidates for city office "not certified": Mayor: Lawrence Behr and Douglas Michael Chastney; Clerk: Andrey Duzyj; City Council: Marilyn Williams (District 4) and Jerry T. Bell (District 5).

---

[7]**Dkt 1-18** – *Berdy v Buffa* Macomb County Circuit Court Opinion and Order May 31, 2019.
[8]**Dkt 1-19** – 2019 Macomb County Candidate List Updated April 26, 2019.

The City Clerk subsequently updated the candidate list and certified all candidates were previously disqualified or not certified.[9] The City Clerk did not refuse to certify or disqualify any candidate for exceeding the term limits restrictions in Sections 4.3(d) and 4.4(d) of the city charter.

## C.   It is undisputed that 4 incumbents will have served at least 3 complete terms on City Council by the 2019 election.

Incumbent Councilman Cecil D. St. Pierre, Scott Stevens, Steve Warner, and Robert Boccomino all filed for re-election.[10] Plaintiffs admitted the incumbents were all elected to at least 3 terms.[11]

### Law and Argument

## I.   Mootness

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."[12] "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue."[13] "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested

---

[9]**Dkt 1-20** – 2019 Macomb County Candidate List August 7, 2019 Primary.
[10]*Id*.
[11]**Dkt. 1** at ¶33-36.
[12]*Powell v. McCormack*, 395 U.S. 486, 496 (1969).
[13]*United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)).

relief."[14] The Sixth Circuit determines mootness "by examining whether an actual controversy between the parties exists in light of intervening circumstances."[15]

This case is moot. Ballots for the August 2019 primary election had been approved by the County Election Commission before this case was filed. Following approval by the County Election Commission, county officials sent the ballots to the printer, also before this case was filed. County officials confirmed that, as of 9:54 a.m. on June 19, 2019, ballots have been printed and delivered to local officials, including the County Clerk.[16]

The printed ballots must be mailed to overseas voters, particularly soldiers and other military personnel, 45 days before the election.[17] As the election will be held on August 6, 2019, 45 days before it is June 22, 2019. There is clearly not enough time to re-print the ballots before this deadline.

If a State is not able to meet that deadline ahead of a federal election, the chief elections officer of the State may seek and obtain a waiver from the President of the United States or his designee, after consultation with the Attorney General.[18] This extraordinary requirement appears not to apply in 2019 when merely local elections

---

[14]*Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).
[15]*Fleet Aerospace Corp. v. Holderman,* 848 F.2d 720, 723 (6th Cir. 1988).
[16]**Exhibit A** – Email from Macomb County Corporation Counsel.
[17]Mich. Comp. Laws §168.714(1) and 52 USC §20302(f).
[18]52 USC §20302(g) and (h).

will be held, but it shows the importance placed on timely printing and delivering absentee ballots to military and other overseas voters.

The Motion should be denied, and this case should be dismissed, as moot.

## II. Ripeness and Res judicata

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state."[19]

Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action."[20] Privity is limited to 'a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented.'[21] Furthermore, the Michigan Court of Appeals has explained that privity exists where "[t]he parties to the second action [are] only substantially identical to the parties in the first action."[22] Michigan courts require 'both a substantial identity of interests and a working or functional relationship ... in which the interests of the non-party are presented and protected by the party in the litigation.'[23]

---

[19]*Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738).
[20]*Montana v. United States*, 440 U.S. 147, 153 (1979).
[21]*United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007) (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 481 (6th Cir. 1992)).
[22]*Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1; 672 N.W.2d 351 (2003).
[23]*Peterson Novelties, Inc.*, 259 Mich. App. at 12-13 (quoting *Phinisee v. Rogers*, 229 Mich. App. 547, 553-54 (1998)).

The State Supreme Court decision was issued on June 11, 2019. It is subject to a motion for rehearing or reconsideration for 21 days, or until July 2, 2019.[24] Defendants may decide to file such a motion. This case is not yet ripe for review.

If no such motion is filed, the State Supreme Court decision will be a final judgment for purposes of res judicata.

The interests of the Plaintiffs, who are admittedly political associates of the term-limited incumbents, were adequately represented in the State lawsuit by Defendants. Indeed, Defendants argued strenuously that the incumbents should have been included on the ballots. The federal Plaintiffs and the State Defendants had identical positions.

This is sufficient to bar the federal Plaintiffs' claims under res judicata. Even though the federal Plaintiffs and the State Defendants did not proceed on identical claims, they sought the same relief: inclusion of the term limited incumbents on the ballot. As in *Simpson v. Garrett*, "A court of competent jurisdiction has already adjudicated the issues raised by Plaintiff[s] and issued a valid judgment thereon; that judgment is conclusive between the parties and their privies."[25]

This case is not yet ripe, but when it becomes ripe, it will be barred by res judicata.

---

[24]Mich. Ct. R. 7.311(F) and (G).
[25]**Exhibit B** – *Simpson v. Garrett*, No. 16-13784, at *6 (E.D. Mich. Dec. 28, 2016).

## III.   Injunctive Relief

A preliminary injunction is an extraordinary remedy never awarded as of right."[26] When considering a motion for a preliminary injunction a court must balance the following four factors:

(A) whether the movant has a strong likelihood of success on the merits;

(B) whether the movant would suffer irreparable injury without the injunction;

(C) whether issuance of the injunction would cause substantial harm to others;

(D) whether the public interest would be served by issuing the injunction.[27]

### A.   Plaintiffs are not likely to succeed on the merits.

#### 1.   Term limits survive challenges under the First and Fourteenth Amendments.

States can clearly impose term limits on their own officers and the officers of a local government.[28]

The Sixth Circuit has already considered and rejected constitutional challenges to term limits imposed on State officials.[29] As local governments are subdivisions of the States, the analysis of State and local power is the same.

---

[26]*Winter v. Nat'l Res. Def. Council, Inc.,* 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

[27]*Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n,* 110 F.3d 318, 322 (6th Cir.1997).

[28]*U.S. Term Limits v. Thornton*, 514 U.S. 779, 825-826, 115 S. Ct. 1842 (1995).

[29]*Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 918 (6th Cir. 1998).

In *Citizens for Legislative Choice v Miller*, the Sixth Circuit upheld a Michigan constitutional amendment that imposed lifetime term limits on State legislators.[30] The Sixth Circuit found that limiting State House members to 3 terms of 2 years each and State Senate members to 2 terms of 4 years each did not violate the First or Fourteenth Amendments. Certainly, the Warren City Charter, which allows a maximum of 3 terms of 4 years each, is constitutional.

*Miller* noted that there was authority that a state's decision to limit the terms of its elected officials raises no substantial federal question.[31] *Miller*, however, did not decide the jurisdictional issue because jurisdiction had been conceded. This Court, however, should satisfy itself that it has jurisdiction to consider this case, especially in light of the concerns raised above regarding mootness and res judicata.

To the extent this Court reaches the merits, *Miller* compels denial of the Motion and dismissal of the case. *Miller* recognized that a voter has no right to vote for a specific candidate or even a particular class of candidates.[32] *Miller* included an impressive survey of other court cases upholding term limits, noting that 23 of 24 courts had upheld term limits and citing with approval a case upholding a lifetime ban on city council districts.[33]

---

[30]*Id*.
[31]*Id*. at 919 (citing *State ex rel Maloney v. McCartney,* 159 W.Va. 513, 223 S.E.2d 607, *appeal dismissed, Moore v. McCartney,* 425 U.S. 946, 96 S.Ct. 1689 (1976)).
[32]*Miller*, 144 F.3d at 921.
[33]*Id*. at 921-923.

Under the balancing approach used in *Miller*, the Sixth Circuit upheld Michigan's term limits under a compelling interest standard.[34] Term limits imposed a neutral burden that still allowed voters other avenues to express their preferences. At the same time, the State, and by extension the City of Warren, has a compelling interest in structuring its government. Without endorsing the wisdom of these interests, the Sixth Circuit recognized lifetime term limits could also enhance the lawmaking process by dislodging entrenched leaders, curbing special interest groups, and decreasing political careerism.[35] Finally, *Miller* found lifetime term limits were narrowly tailored to achieve those interests.[36]

Similarly, *Miller* upheld term limits under a deferential approach that recognized the State's interest in structuring its own government. The same analysis applies to a local government. Article 7 of Michigan's Constitution provides that cities may be organized under laws of general applicability. The most important law of general applicability is the Home Rule City Act.[37] That act provides that cities, including the City of Warren, are governed under locally-drafted and locally-

---

[34]*Miller* noted either a rational basis or compelling interest review could apply depending on the severity of the burden to the right to vote. Since term limits were upheld under the compelling interest standard, they would have survived under rational basis review as well.

[35]*Id*. at 923.

[36]*Id*. at

[37]Mich Comp. Laws 117.1 *et seq*.

approved charters that must prescribe qualifications for their officers. Term limits are a perfectly acceptable qualification.

The decision in *Warf*,[38] *Griffin*,[39] and *Roe*[40] do not change this analysis. *Warf* involved a post-election challenge in which significant irregularities were discovered during the election. *Griffin* also involved a post-election challenge, in which State officials had retroactively invalidated a potentially controlling number of votes cast in the primary election after State officials had expressly indicated such votes would be allowed. *Roe* also involved a post-election challenge to established practices.

These cases are not applicable here or to *Berdy v Buffa*, in which pre-election eligibility of candidates were at issue. *Miller* is controlling.

      2.    ***Berdy v Buffa* did not depart from established State election practice.**

          i.    *Brisson*

The State Defendants' position in *Berdy v Buffa* contradicted their position in an earlier case, *Brisson v Warren Election Commission and Richard P. Sulaka*.[41] In *Brisson*, a candidate for City Council case sued the City Election Commission and

---

[38] *Warf v Bd. of Elections. Of Green County, Ky.*, 619 F3d. 533 (6th Cir. 2010).
[39] *Griffin v Burns*, 570 F.2d 1065 (1st Cir. 1978).
[40] *Roe v Alabama*, 43 F.3d 574 (11th Cir. 1995).
[41] **Exhibit C** – *Brisson v Warren Election Com'n*, unpublished per curiam opinion of the Michigan Court of Appeals, issued Feb. 8, 2005 (Docket No. 250809). At the time *Brisson* was decided, Richard P. Sulaka was the Warren City Clerk.

the City Clerk after those "defendants decided to remove his name for failure to satisfy the city's residency requirements."[42]

During the trial court proceedings, the Circuit Court ordered the Election Commission to conduct a hearing regarding the Mr. Brisson's residency. That the hearing was transcribed, and the parties were ordered to appear before the Circuit Court the next day.[43]

The Court of Appeals reviewed the proceedings from the Circuit Court and before the City Election Commission, approved the procedures used, and agreed with the Circuit Court's findings of fact.[44]

The procedures used in *Brisson* were consistent with the Michigan Election Law and the duties by that law on the City Election Commission and the City Clerk. Those procedures were approved by the Circuit Court and the Court of Appeals.

In contrast, in *Berdy v Buffa*, city officials pointed to a supposed procedure of having the City Council determine eligibility and approve the ballots, but that procedure had no discernable basis in fact. By rejecting a procedure that the City had essentially made up and requiring the City to follow its own charter and the Michigan Election Law, the State Supreme Court did not depart from established practice.

---

[42]**Exhibit C** at *1.
[43]**Exhibit D** – Register of Actions for *Brisson v Warren Election Com'n*, Macomb County Circuit Court Case No. 2003-003602-AW.
[44]**Exhibit C** at *2.

### ii.   *Olejniczak*

The *Olejniczak* decision was not precedent, and Plaintiffs were wrong to rely on it. Stare decisis means "To abide by, or adhere to, decided cases."[45] Stare decisis is generally the preferred course when it applies, but, even then, it is not an inexorable command.[46]

Neither a Circuit Court's prior rulings nor an unpublished order of the Court of Appeals denying a late application for leave to appeal were binding under Michigan law. *Olejniczak* involved an application for leave to appeal filed more than 21 days after entry of the final order, which itself was a stipulated order to dismiss.

Specifically, the *Olejniczak* plaintiff appealed an order dated May 11, 2015. The application for leave to appeal was not filed, however, until June 8, more than 21 days later. Moreover, it is likely that the ballots were either already printed or about to be printed imminently when the Court of Appeals issued its order on June 11, 2015.

Also, in *Olejniczak*, the plaintiff apparently stipulated to dismissal of the case with prejudice.[47] By stipulating to the substance of the Circuit Court's decision, that

---

[45]*Robinson v City of Detroit*, 462 Mich 439, 463, 613 NW2d 307 (2000) (citing Black's Law Dictionary (rev. 4th ed.), p.1577).
[46]*Robinson*, 462 Mich at 463-464.
[47]See **Dkt 1-17** – *Lanette Olejniczak v City of Warren Election Com'n*, unpublished order of the Court of Appeals, entered June 11, 2015 (Docket No. 327779).

plaintiff may have divested the Court of Appeals of any authority to hear the appeal.[48]

It should not be surprising that the Court of Appeals was not willing to consider the merits of a moot appeal that was filed late, and which sought relief from an order stipulated to below. *Olejniczak* did not establish a State election practice.

Plaintiffs are not likely to succeed on the merits of their constitutional challenge.

### B.    Plaintiffs will not suffer any irreparable harm.

Plaintiffs claim they will be unable to vote for their preferred candidates. One in particular claims that he would have run for city council if he had known about the term limits provision would have been enforced.

This argument is meritless. Assuming they are otherwise eligible, Plaintiffs can run for City Council through the write-in process under Michigan law. Plaintiffs could also recruit other candidates to run write-in campaigns. Plaintiffs' only injury is that they will not be able to vote for the term-limited incumbents themselves. This injury can easily be repaired by lobbying the existing candidates or recruiting a candidate to run as a write-in. As Plaintiffs are doubtlessly aware, Michael Duggan was recently elected following a write-in campaign.

---

[48]*Dybata v Kistler*, 140 Mich App 65, 68, 362 NW2d 891 (1985).

Plaintiffs will not suffer irreparable harm if injunctive relief is denied. Indeed, given *Miller*'s recognition that they had no right to vote for specific, ineligible candidates, it is difficult to see how Plaintiffs have been harmed at all.

### C.    Injunctive relief risks harming others.

Defendant-Intervenor Berdy and other candidates affected by *Berdy v Buffa* have an important interest in competing against candidates who are actually eligible to hold City office if they are elected. Further, the voters of the City of Warren have an interest in casting votes for candidates who are eligible to serve if they receive the most votes. Those interests will be harmed if injunctive relief is granted.

### D.    Injunctive relief at this point is not in the public interest.

As noted above, ballots have already been printed. The cost to reprint ballots will be significant.

Further, military and other overseas voters will be disenfranchised if there is a delay in approving the absentee ballots. In *Berdy v Buffa*, the parties, the attorneys, and every level of the State court system worked diligently to obtain a final decision before ballots were printed, in large part because of the recognized-need to respect the rights of overseas voters, especially military voters. It is not in the public interest to restart this process now, when ballots are due to be mailed out on Saturday.

All four factors weigh against granting injunctive relief. The Motion should be denied.

## **Conclusion**

This case is not appropriate for review at this time. It is both moot and not yet ripe. It is moot because the ballots have already been printed. It is not yet ripe as Defendants may file a motion for reconsideration with the State Supreme Court.

Once the case ripens, however, review will be barred by res judicata because Plaintiffs interests were adequately represented by Defendants in State Court.

This Court should not go to extraordinary lengths to circumvent the doctrines of mootness, ripeness, and res judicata, given the lack of merit in the case itself. This case has already been decided when both this District and the Sixth Circuit upheld stricter term limits for Michigan's legislators. The Motion should be denied, and this case should be dismissed.

JIM KELLY LAW, PC

 /s/ James J. Kelly
James J. Kelly (P72111)
Attorneys for Def-Intervenor Berdy
30300 Northwestern Hwy, Ste 324
Farmington Hills, MI 48334
Dated: June 19, 2018                (248) 449-4444

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing instrument was served on all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings, by electronic filing, on June 19, 2019.

JIM KELLY LAW, PC


 /s/ James J. Kelly
James J. Kelly (P72111)
Attorneys for Def-Intervenor Berdy
30300 Northwestern Hwy, Ste 324
Farmington Hills, MI 48334
Dated: June 19, 2018                     (248) 449-4444

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

SALLIE HOCK,                                Case No. 2:19-cv-11785-MOB-RSW
JASON MCCLANAHAN,                            Hon. Marianne O. Battani
CLIFFORD J. FROST, and
DARRELL VICKERS,

      Plaintiffs,

      v.

SONJA BUFFA, in her official capacity as
Warren City Clerk and WARREN CITY
ELECTION COMMISSION, an agency of
a Michigan municipal corporation

      Defendants, and

Connor Berdy,

      Defendant-Intervenor.

---

THE MIKE COX LAW FIRM, PLLC
Michael A. Cox (P43039)
Attorney for Plaintiffs
17430 Laurel Park Drive North, Suite 120E
Livonia, MI 48152
(O) (734) 591-4002
(F) (734) 591-4006
mc@mikecoxlaw.com

JIM KELLY LAW, PC
James J. Kelly (P72111)
Attorney for Defendant-Intervenor Berdy
30300 Northwestern Hwy, Suite 324
Farmington Hills, MI 48334
(O) (248) 449-4444
(F) (844) 722-9161
Jim@JimKellyLaw.com

BERRY MOORMAN P.C
Mark E. Straetmans (P29158)
Attorneys for Def Buffa and
Warren City Election Commission
535 Griswold, Suite 1900
Detroit, MI 48226
(O) (313) 492-1200
(F) (313) 496-1300
mstraetmans@berrymoorman.com

---

## INDEX OF EXHIBITS TO DEFENDANT-INTERVENOR CONNOR BERDY'S RESPONSE TO PLAINTIFFS' EMERGENCY MOTION

| **Exhibit** | **Description** |
|---|---|
| A | Email from Macomb County Corporation Counsel |
| B | *Simpson v. Garrett*, No. 16-13784, at *6 (E.D. Mich. Dec. 28, 2016). |
| C | *Brisson v Warren Election Com'n*, unpublished per curiam opinion of the Court of Appeals, issued Feb. 8, 2005 (Docket No. 250809) |
| D | Register of Actions for *Brisson v Warren Election Com'n*, Macomb County Circuit Court Case No. 2003-003602-AW |

JIM KELLY LAW, PC

/s/ James J. Kelly
James J. Kelly (P72111)
Attorneys for Def-Intervenor Berdy
30300 Northwestern Hwy, Ste 324
Farmington Hills, MI 48334
Dated: June 19, 2018                              (248) 449-4444

Exhibit A



Jim Kelly <jim@jimkellylaw.com>

---

## Warren Council Lawsuit
1 message

---

**Frank Krycia** <frank.krycia@macombgov.org>                    Wed, Jun 19, 2019 at 9:54 AM
To: Jim Kelly <jim@jimkellylaw.com>, Rob Huth <rhuth@khlblaw.com>

We have confirmed that the ballots have been printed and are in the possession of Warren's Clerk.

--
Frank Krycia
Assistant Corporation Counsel

Phone: (586) 469-6346

PRIVACY NOTICE:  This message is intended only for the individual or entity to which it is addressed.  It contains privileged, confidential information, which is exempt from disclosure under applicable laws.  If you are not the intended recipient, please note that you are strictly prohibited from disseminating or distributing this information (other than to the intended recipient) or copying this information.  If you have received this communication in error, please notify me immediately by the email address or telephone number listed above.  Thank you.

Exhibit B

2016 WL 7453763
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

Tawanna SIMPSON, Plaintiff,

v.

Cathy M. GARRETT, et al., Defendants.

Case No. 16-13784
|
Signed 12/28/2016

**Attorneys and Law Firms**

Andrew A. Paterson, Jr., Novi, MI, for Plaintiff.

Janet Anderson-Davis, Wayne County Corporation Counsel, Detroit, MI, for Defendants.

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTION [2]; GRANTING WAYNE COUNTY DEFENDANTS' MOTION TO DISMISS [9]; DENYING AS MOOT PLAINTIFF'S EMERGENCY MOTION TO EXPEDITE DECISION/HEARING ON MOTION FOR PRELIMINARY INJUNCTION AGAINST WAYNE COUNTY BOARD OF CANVASSERS [10]; AND SUA SPONTE DISMISSING DEFENDANTS JANICE WINFREY AND CITY OF DETROIT ELECTION INSPECTORS**

Arthur J. Tarnow, Senior United States District Judge

**\*1** Before the Court is Plaintiff Tawanna Simpson's Motion for Temporary Restraining Order, or in the alternative, Motion for Preliminary Injunction and a Motion to Dismiss by Defendants Wayne County Clerk Cathy M. Garrett, Wayne County Election Commission, and Wayne County Board of Canvassars. The Court now finds the motions suitable for determination without a hearing in accord with Local Rule 7.1(f)(2).

For the reasons stated below, the Court will **DENY** Plaintiff's Motion for Temporary Restraining Order, or in the alternative, Motion for Preliminary Injunction

[2] and **GRANT** the Motion to Dismiss [9] by the Wayne County Defendants. The Court will also **DENY AS MOOT** Plaintiff's Motion to Expedite Decision/ Hearing on the Motion for Preliminary Injunction against Wayne County Board of Canvassars [10] and *sua sponte* **DISMISS** Defendants Janice Winfrey, Detroit City Clerk, and the City of Detroit Election Inspectors. *See Drew v. Enter. Leasing of Detroit, LLC*, No. 13-11460, 2015 U.S. Dist. LEXIS 58004, at \*5, 2015 WL 1219537 (Whalen, M.J.), *report and recommendation adopted* 2015 U.S. Dist. LEXIS 57334, 2015 WL 1966653 (E.D. Mich. May 1, 2015) (Goldsmith, J).

**FACTUAL BACKGROUND
AND PROCEDURAL HISTORY**

Plaintiff Tawanna Simpson filed an affidavit of identity with Defendant Detroit City Clerk and paid the $100 filing fee in July 2016 to qualify as a candidate for the Detroit Community School District Board of Education ("Board of Education") for the November 2016 general election. On September 13, 2016, after certification from the Wayne County Clerk, the Defendant Wayne County Election Commission convened and voted to approve Plaintiff's name to appear on the November 2016 general election ballot. At this meeting, the Election Commission also determined that the affidavit of identity of Penelope Bailer, another candidate running for a position on the Board of Education, had been improperly filed and that Ms. Bailer had not received proper certification from the Wayne County Clerk. The Election Commission voted not to place Ms. Bailer's name on the November 2016 ballot as a candidate for the Board of Education.

Ms. Bailer subsequently filed an Emergency Motion for Mandamus and Order to Show Cause against the Election Commission and Detroit City Clerk in the Wayne County Circuit Court on September 15, 2016 (hereinafter referred to as the "Bailer Election Matter"). [1] Wayne County Circuit Court Chief Judge Colombo entered an order compelling the Election Commission and Detroit City Clerk to appear for a hearing that was scheduled for September 16, 2016.

Plaintiff's counsel attended the show cause hearing and briefly participated in oral arguments. [2] After the hearing, Judge Colombo granted Ms. Bailer's motion and ordered the Election Commission "to take necessary steps to

place the name of Penelope N. Bailer on the November 8, 2016 General Election ballot as a candidate for the Detroit Community School District." (Pl.'s Ex. F, Dkt. 1-6). Plaintiff alleges that the Election Commission neither convened as a public body nor determined whether Ms. Bailer was properly certified to have her name placed on the ballot as a candidate since the entry of Judge Colombo's September 16 Order in the Bailer Election Matter.

**\*2** Robert Davis and Desmond White[3] appealed Judge Colombo's decision. The Michigan Court of Appeals and the Michigan Supreme Court denied their appeals on September 21 and 22, 2016, respectively. *See Bailer v. Detroit City Clerk, et al.*, unpublished opinion per curiam of the Court of Appeals, issued September 21, 2016 (No. 334823); *Bailer v. Detroit City Clerk, et al.*, unpublished order of the Supreme Court, entered September 22, 2016 (No. 154459).

Plaintiff's counsel appeared before Judge Colombo in an unrelated matter on September 23, 2016. At the conclusion of the hearing, Judge Colombo allegedly spoke with Plaintiff's counsel at sidebar, asking about Robert Davis' motives in seeking to remove Ms. Bailer from the ballot. Later that day, Davis and Ms. White filed a complaint with the Wayne County Circuit Court against Defendants Wayne County Clerk, Wayne County Election Commission, Penelope Bailer, and the Detroit City Clerk (hereinafter referred to as the "Davis Election Matter").[4] The case was assigned to Judge Colombo, who, after a show cause hearing on September 28, 2016, dismissed the complaint and sanctioned Davis and his counsel. It is the Court's understanding that Davis' appeal is currently pending before the Michigan Court of Appeals. (Dkt. 7-12, Pg. ID 287).

Robert Davis then filed an Emergency Complaint or in the alternative, Motion for Preliminary Injunction with the Court on October 3, 2016 (*Davis v. Ruth Johnson, et al.*, No. 16-13545, Dkt. 1 & 2). Davis filed an Amended Complaint and renewed motion for injunctive relief on October 10, 2016, in which he added several parties to the lawsuit, including Plaintiff Tawanna Simpson. During a phone status conference on October 14, 2016, the Court determined that it was appropriate to dismiss Ms. Simpson from Davis' lawsuit, as they are pursuing different claims for relief. Thereafter, Plaintiff Simpson filed the instant lawsuit on October 24, 2016. She seeks

the issue of a Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b), or in the alternative, a Preliminary Injunction pursuant to Fed. R. Civ. P. 65(a). The Court notes that Plaintiff's complaint presents no allegations as to Defendants Janice Winfrey, the Detroit City Clerk, and the City of Detroit Elections inspectors.

Plaintiff contends that she has been denied equal protection and due process of law under the Fourteenth Amendment because Defendants allowed Ms. Bailer's name to be printed on the November 2016 general election ballot as a candidate for the Board of Education: 1) without proper certification from the Defendant Wayne County Clerk; and 2) without the Defendant Wayne County Election Commission meeting as a public body to determine whether Ms. Bailer's name was properly certified, as required by M.C.L. § 168.689. Plaintiff argues that this Court should grant the following relief:

- Injunctive relief that preliminarily and permanently enjoins Defendants from counting and/or certifying any votes cast for Penelope Bailer;

- An award of compensatory, punitive, and nominal damages against the Defendants for denying Plaintiff due process and equal protection under the law.

**\*3** ● An award of attorney fees and costs pursuant to 42 U.S.C. § 1988

- A declaratory judgment declaring that Penelope Bailer's name should not have been printed on the November 8, 2016 General Election ballot because the Defendant Wayne County Clerk did not first certify her name to the Defendant Wayne County Election Commission for it to be placed on the November 8, 2016 General Election ballot because of Penelope Bailer's fatally flawed affidavit of identity.

Defendants filed a Response (Dkt. 7) to Plaintiff's Motion on November 2, 2016, to which Plaintiff replied on November 7, 2016 (Dkt. 8). The County Defendants also filed a Motion to Dismiss (Dkt. 9) on November 7, 2016, in which they set forth the following arguments:

- This Court lacks subject matter jurisdiction over Plaintiff's claims;

- Plaintiff's claims are barred by the doctrine of laches;

- Plaintiff's claims are barred by the preclusion doctrines of res judicata and collateral estoppel;

- Plaintiff's claims are barred by *Rooker-Feldman*;

- Plaintiff's constitutional rights have not been violated;

- There are state remedies available to address Plaintiff's claims;

- Plaintiff's Fourteenth Amendment Due Process claim fails for lack of a constitutionally protected liberty interest; and

- Plaintiff's Fourteenth Amendment Equal Protection Claim fails because the County Defendants' actions did not constitute a violation of Plaintiff's fundamental right to vote.

Plaintiff later filed an Emergency Motion for Expedited Decision/Hearing (Dkt. 10) on the Motion for Temporary Restraining Order/Preliminary Injunction. Defendants filed a Response (Dkt. 11), in which they argue that "[n]ot certifying the results for Penelope Bailer would serve no purpose," as she "is a losing candidate who will not take office." *Id.* Moreover, Defendants contend, this case is moot, first because neither Bailer nor Plaintiff received enough votes to serve on the School Board, and second, because Plaintiff lacks a cognizable interest in the outcome of the litigation. Plaintiffs have not responded to the Wayne County Defendants' Motion to Dismiss.

## STANDARD OF REVIEW

The County Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim upon which relief can be granted.

A motion to dismiss under Rule 12(b)(1) can fall into two categories: facial attacks or factual attacks. Facial attacks challenge the sufficiency of the pleadings. "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In contrast, a factual attack challenges "the factual existence of subject

matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations ... and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

**\*4** To survive a 12(b)(6) motion, Plaintiff's complaint must plead factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012). "A plaintiff's complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Iqbal, 556 U.S. at 678* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Courts are not required to accept as true legal conclusions framed as factual allegations. *See Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ANALYSIS

The Wayne County Defendants set forth various arguments as to why this case should be dismissed. The Court will address Defendants' arguments for mootness and preclusion in turn.

### I. Mootness

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *United States v. City of Detroit*, 401 F.3d 448, 450 (6th Cir. 2005) (quoting *Cleveland Branch, N.A.A.C.P. v. City of Parma*,

263 F.3d 513, 530 (6th Cir. 2001)). "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986). The Sixth Circuit determines mootness "by examining whether an actual controversy between the parties exists in light of intervening circumstances." *Fleet Aerospace Corp. v. Holderman,* 848 F.2d 720, 723 (6th Cir. 1988).

At the present time, the November 2016 General Election has concluded, and the new members of the Board of Education have been chosen. Neither Plaintiff nor Bailer was elected to serve on the Board, and therefore, the Court can no longer provide effective relief for Defendants' alleged violations. *ACLU of Ohio v. Taft*, 385 F.3d 641, 646 (6th Cir. 2004); *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004). Furthermore, the problem for Plaintiff is that the relief she seeks would not "make a difference to the legal interests of the parties." *McPherson v. Michigan High Sch. Athletic Ass'n Inc.*, 119 F.3d 453, 458 (6th Cir. 1997).

The capable of repetition, yet evading review exception to mootness applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). The Supreme Court has noted that the doctrine "applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

Applying the Sixth Circuit's capable of repetition, yet evading review test, the Court finds that Plaintiff's case does not fall within the exception to mootness. As to the first prong of the mootness exception test, the Court believes that "[t]iming is everything." *Crookston v. Johnson*, No. 16-2490, 2016 U.S. App. LEXIS 19494, at *1, 2016 WL 6311623 (6th Cir. Oct. 28, 2016). The *Crookston* Court stated:

> **\*5** When an election is imminent and when there is inadequate time to resolve factual disputes and legal disputes, courts will generally decline to grant an injunction to alter a State's established election procedures. *That is especially true when a plaintiff has unreasonably delayed in bringing his claim*, as [Plaintiff] most assuredly has. Call it what you will—laches, the *Purcell* principle, or common sense —the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.

*Id.* at *4 (emphasis added) (internal citations omitted).

Plaintiff has not satisfied the first part of the mootness exception test. As the Michigan state courts found, Penelope Bailer's defective affidavit of identity was available to the public no later than July 26, 2016, yet Plaintiff waited until October 10, 2016 [5] —less than one month before the general election and several weeks after the commencement of the printing of absentee ballots—to join in Davis' challenge to Bailer's candidacy. The Court determines that there was ample time for Plaintiff Simpson to litigate the various issues and controversies arising from the Defendants' alleged wrongful inclusion of Bailer's name on the general election ballot. Moreover, even assuming that there was insufficient time for Plaintiff's lawsuit to be fully litigated, she has not demonstrated that she has "a reasonable expectation that the circumstances giving rise to [her] suit will likely arise in future elections." *Ohio Democratic Party v. Blackwell*, No. 04-1055, 2005 U.S. Dist. LEXIS 18126, at *30 (S.D. Ohio. Aug. 26, 2005). There is no reason for the Court to expect that Plaintiff will subjected to the same alleged violations in the future. *See Weinstein*, 423 U.S. at 149.

Because no justiciable claim exists on which the Court can rule, this case is moot.

### II. Preclusion Doctrine—Res Judicata

"Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007) (citing 28 U.S.C. § 1738). "Michigan recognizes two preclusion doctrines: res judicata, or claim preclusion; and collateral estoppel, or issue preclusion." *Id.* at 330-31.

Michigan has adopted a broad application of the res judicata doctrine, which "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Adair v. State*, 470 Mich. 105; 680 N.W.2d 386, 396 (Mich. 2004). Res judicata bars "not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Baraga County v. State Tax Comm'n*, 466 Mich. 264; 645 N.W.2d 13, 16 (Mich. 2002).

The United States Supreme Court has held that under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). The Sixth Circuit has further explained that "[p]rivity is limited to 'a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented.' " *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007) (quoting *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 481 (6th Cir. 1992)). Furthermore, the Michigan Court of Appeals has explained that privity exists where "[t]he parties to the second action [are] only substantially identical to the parties in the first action." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1; 672 N.W.2d 351 (2003). "Michigan courts require 'both a substantial identity of interests and a working or functional relationship ... in which the interests of the non-party are presented and protected by the party in the litigation.' " *Peterson Novelties, Inc.*, 259 Mich. App. at 12-13 (quoting *Phinisee v. Rogers*, 229 Mich. App. 547, 553-54 (1998)).

**\*6** Plaintiff argues that res judicata does not operate to bar her claims because she was neither a party, nor in privity to any of the parties, in either the Bailer Election Matter or the Davis Election Matter. She further contends that her federal constitutional claims were not and could not have been litigated in the state court cases. Plaintiff also maintains that she shares no identity of interest with Robert Davis.

While it is correct that Plaintiff was not a named party to either the Bailer or Davis Election Matters,

her interests were adequately represented therein. *See Vasilakos*, 508 F.3d at 406. Robert Davis and Desmond White moved Michigan state courts and this Court to, among other things, remove Penelope Bailer from the 2016 ballot. Plaintiff Simpson now seeks to prevent Defendants from certifying and counting any votes cast for Penelope Bailer. Although they may not be proceeding in exactly the same manner, Davis, White, and Plaintiff seek virtually the same results: the removal of Penelope Bailer from the ballot, the disqualification of her candidacy, and the decertification of any votes cast in her favor. The core events that have paved the way for both Davis' and Plaintiff's legal actions are identical: Davis challenged Bailer's candidacy, the Wayne County Election Commission removed Bailer's name from the general election ballot, Bailer appealed the Commission's decision, Judge Colombo ordered the Commission to restore Bailer's name to the ballot, and so forth. *See Anderson v. County of Wayne*, No. 10-13708, 2011 U.S. Dist. LEXIS 65863, at \*17, 2011 WL 2470467 (E.D. Mich. June 20, 2011) (Borman, J.) ("The test for determining preclusive effect is whether the same facts or evidence are crucial to prove the two claims, not whether the bases for relief are the same."). Whether Robert Davis sought to protect Plaintiff's constitutional rights is irrelevant. A court of competent jurisdiction has already adjudicated the issues raised by Plaintiff and issued a valid judgment thereon; that judgment is conclusive between the parties and their privies. *See City of Troy Bldg. Inspector v. Hershberger*, 27 Mich. App. 123; 183 N.W.2d 430, 432-33 (1970); *Knibbe v. City of Warren*, 2 Mich. App. 241; 139 N.W. 2d 344, 346 (1966).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Motion for Temporary Restraining Order, or in the alternative, Preliminary Injunction [2] is **DENIED**.

**IT IS FURTHER ORDERED** that the Wayne County Defendants' Motion to Dismiss [9] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion to Expedite Decision/Hearing on Motion for Preliminary Injunction Against Wayne County Board of Canvassers [10] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Janice Winfrey and City of Detroit Election Inspectors are *sua sponte* **DISMISSED,** as Plaintiff's complaint does not contain any allegations against them.

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7453763

Footnotes

1   *Bailer v. Wayne County Election Comm.*, No. 16-011797-AW, Sept. 14, 2016.

2   Plaintiff's counsel filed an Emergency Motion to Intervene in the Bailer Election Matter on behalf of Robert Davis and Desmond White in the early hours of September 16. Plaintiff alleges that Chief Judge Colombo ultimately did not render a decision on the intervention motion.

3   Desmond White ran as a write-in candidate for the Board of Education. Robert Davis, a registered voter in Highland Park, supports Plaintiff Simpson and Desmond White. He opposed Ms. Bailer's candidacy.

4   *Davis v. Garrett*, Wayne County Circuit Court Case No. 16-012226-AW, Sept. 23, 2016.

5   October 10, 2016 is the date on which Robert Davis filed his Amended Complaint in which he added Plaintiff Simpson to his lawsuit. *Davis v. Ruth Johnson, et al.*, No. 16-13545, Dkt. 10.

**End of Document**                                     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit C

# STATE OF MICHIGAN

# COURT OF APPEALS

---

GLENN R. BRISSON,

      Plaintiff-Appellee,

v

WARREN ELECTION COMMISSION and
RICHARD PAUL SULAKA,

      Defendants-Appellants.

UNPUBLISHED
February 8, 2005

No.  250809
Macomb Circuit Court
LC No.  03-003602-AW

---

Before:  Zahra, P.J., and Neff and Cooper, JJ.

PER CURIAM.

Defendants appeal as of right from the trial court's order denying their claim for the costs incurred in having to reprint ballots for the September 9, 2003, primary election.  We affirm. This appeal is being decided without oral argument pursuant to MCR 7.214(E).

Plaintiff, who sought election to the Warren City Council, filed suit to compel defendants to place him on the ballot after defendants decided to remove his name for failure to satisfy the city's residency requirements.  The trial court ultimately agreed with defendants' decision to remove plaintiff's name from the ballot after reviewing testimony taken at hearings held by defendant Warren Election Commission and reviewing the materials presented by the parties in support of their positions.

The trial court also held that defendants were not entitled to recover costs incurred as a result of having to print a second ballot that did not list plaintiff as a candidate.  Due to the timing of plaintiff's claim and the imminent election, however, this case was reviewed in an expedited manner.  As a result, defendants never filed a formal counterclaim against plaintiff for these costs.  Defendants maintain that the trial court erred when it decided this issue without having been presented with a written counterclaim in response to plaintiff's writ of mandamus. We disagree.

Defendants provide no authority directly on point in support of their position that they were prejudiced by the trial court's failure to allow them the opportunity to file a counterclaim. They simply cite to MCR 2.203(C), 2.203(E) and 2.108(A)(1) and state that, under the court rules, they had twenty-one days to answer the plaintiff's complaint and file a counterclaim for damages. Defendants assert that they were denied the opportunity to file an unspecified counterclaim due to the timing of the trial court's intermediate orders and its premature decision.

-1-

More importantly, defendants do not disclose under what theory they would be entitled to recover the printing costs. They provide a citation to § 13.15(7) of the Warren City Charter that empowers the commission to "make complaint and to prosecute any person whom the commission shall have good cause to believe has been guilty of violation of the election laws." This section may provide the commission with the standing to seek relief in the criminal courts for a candidate's alleged misconduct, and perhaps recover these costs in any future criminal prosecution. However, defendants do not explain how this provides them with a specific civil cause of action to seek recovery of the ballot printing costs due to the erroneous inclusion of plaintiff's name. An appellant may not simply announce a position or assert error then leave it up to this Court to discover and rationalize the basis of his claim and uncover authority to sustain or reject his position. *Mudge v Macomb Co*, 458 Mich 87, 104-105; 580 NW2d 845 (1998). In any event, we have found no support for such a claim.

In addition, defendants' claim of error ignores the language of MCR 2.118(C)(1), which provides in pertinent part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they are treated as if they had been raised by the pleadings." Here, defendants incorrectly state that the court improperly based its assumption that defendants would seek the reimbursement of printing costs on allegations in newspaper articles.   Prior to plaintiff's decision to file a claim for relief, defendant commission passed a resolution to seek reimbursement of the printing costs from plaintiff and to pursue criminal penalties if possible. It is clear then that the issue of costs was raised as an issue, despite the lack of a formal counterclaim.

Further, defendants' counsel expressly consented to the trial court deciding the issue of costs going so far as to say, "Your honor, we'll accept whatever ruling you make on that issue." Counsel did not move to amend the pleadings to conform to the evidence or raise any other issue he thought would be viable. MCR 2.118(C)(1). Instead, counsel went so far as to suggest that defendants return plaintiff's application fee that the court ordered. Counsel's knowing waiver and consent bind defendants. *People v Carter,* 462 Mich 206, 214; 612 NW2d 144 (2000).

Moreover, even if defendants had presented this Court with a possible theory on which they could have recovered the printing costs, defendants cannot show that the trial court's factual decision was clearly erroneous. Having reviewed the trial court proceedings and those held before the hearing commission, we agree with the trial court's findings. It is evident that defendants failed to communicate to plaintiff whether the two-year residency requirement contained in Section 4.2 of the Warren City Charter would apply to defendant's candidacy, as opposed to the thirty-day requirement contained in MCL 168.492, or whether it had ever been enforced prior to plaintiff's application to be a city counsel candidate. We therefore affirm the trial court's decision that defendants are not entitled to recover the ballot printing costs in this civil action.

Affirmed.

/s/ Brian K. Zahra
/s/ Janet T. Neff
/s/ Jessica R. Cooper

-2-

Exhibit D

Skip to main content

## 2003-003602-AW

Case Type:
AW-OTHER WRITS

Case Status:
Closed

File Date:
08/08/2003

DCM Track:

Action:
ALL OTHER WRITS FILED

Status Date:
08/08/2003

Case Judge:
FAUNCE, JENNIFER M

Next Event:

| All Information | Docket | Party | Disposition |

### Docket Information

| Date | Description | Docket Text | Amount Owed | Amount Due |
|------|-------------|-------------|-------------|------------|
| 08/08/2003 | ENTRY FEE | ENTRY FEE PAID  $100.00 #091680 | | |
| 08/08/2003 | COMPLAINT/PETITION FILED | COMPLAINT | | |
| 08/08/2003 | SUMMONS ISSUED | SUMMONS ISSUED | | |
| 08/08/2003 | JUDGE | ANTONIO P VIVIANO     CLK  J SCHOTT | | |
| 08/08/2003 | COURT REPORTER | PAMELA MAIGA ORDER TO SHOW CAUSE 8/13/03 @ 8:30 AM AND FOR OTHER RELIEF -SGD APV/MAC | | |
| 08/08/2003 | JUDGE ASSIGNED RANDOM | MARY A CHRZANOWSKI 08/08/03 15:13 R SNYDER | | |
| 08/12/2003 | JUDGE | MARY A CHRZANOWSKI     CLK  P JONES | | |
| 08/12/2003 | COURT REPORTER | VIDEO REQ & NTC FOR FILM & ELECTRONIC MEDIA COVERAGE OF CRT PROCEEDINGS FILED BY DETROIT FREE PRESS - COPIES GIVEN TO ATTY KELLEY & ATTY CONSTANCE R/F IN FILE TRIAL BRIEF | | |
| 08/12/2003 | PROOF OF SERVICE | PROOF OF SERVICE DEFT BRF IN RSP TO ORD TO S/C | | |
| 08/13/2003 | JUDGE | MARY A CHRZANOWSKI     CLK  P JONES | | |

| Date | Description | Docket Text | Amount Owed | Amount Due |
|------|-------------|-------------|-------------|------------|
| 08/13/2003 | COURT REPORTER | VIDEO<br>REQ & NTC FOR FILM &<br>ELECTRONIC MEDIA<br>COVERAGE OF CRT PROCEEDINGS<br>FILED BY<br>CITY OF WARREN COMMUNICATION<br>DEPT R/F<br>IN FILE - COPIES GIVEN TO ATTYS<br>OF<br>RECORD | | |
| 08/13/2003 | JUDGE | MARY A CHRZANOWSKI   CLK  P<br>JONES | | |
| 08/13/2003 | COURT REPORTER | VIDEO<br>S/CAUSE HRG: HLD, CRT ORDERS<br>ELECTION<br>COMMISSION TO CONDUCT A HRG<br>RE PLTFS<br>RESIDENCY QUALIFICATIONS FOR<br>CITY<br>COUNCIL TO BE HLD ON 8/14/03 &<br>THAT THE<br>HRG BE TRANSCRIBED, CITY TO<br>PROVIDE ALL<br>DOCUMENTS INTENDED TO BE<br>USED AT THE HRG<br>BY 4:30PM ON 8/13/03, ADJ TO<br>8/15/03 AT<br>8:30AM FOR HRG IN MAC'S CRT -<br>SGD | | |
| 08/13/2003 | APPEARANCE (LITIGANT'S ATTORNEY) | APPEARANCE (LITIGANT'S PRIMARY<br>ATTORNEY)<br>(AP1. ATTY:HACKEL WILLIAM H III<br>)<br>(  FOR DEF:WARREN ELECTION<br>COMMISSION  )<br>(  FOR DEF:SULAKA RICHARD PAUL<br>) | | |
| 08/13/2003 | PROOF OF SERVICE | PROOF OF SERVICE | | |
| 08/13/2003 | NOTES | S/C HRG:  ADJ TO 8/15/03 AT 8:30<br>FOR HRG -SGD | | |
| 08/18/2003 | JUDGE | MARY A CHRZANOWSKI   CLK  P<br>JONES | | |
| 08/18/2003 | COURT REPORTER | VIDEO<br>HRG: HLD, 2 YR RESIDENCY<br>REQUIREMENT IS<br>CONSTITUTIONAL, PLTFS WRIT OF<br>MANDAMUS<br>IS DISMD & NAME TO BE REMOVED<br>FROM<br>BALLOT, CITY NOT ENTITLED TO<br>COSTS FOR<br>REPRINTING BALLOTS & PLTF TO<br>BE REFUNDED<br>APPLICATION FEE, PLTFS REQ FOR<br>STAY<br>PENDING APPEAL IS DENIED -SGD<br>(CLOSES<br>CASE)<br>PLTF SUPPLEMENTAL BRIEF | | |
| 08/18/2003 | PROOF OF SERVICE | PROOF OF SERVICE | | |
| 08/18/2003 | ORDER ENTERED | ORDER ENTERED | | |

| Date | Description | Docket Text | Amount Owed | Amount Due |
|---|---|---|---|---|
| 08/18/2003 | CASE CLOSED | CASE CLOSED<br>HRG: HLD, 2 YR RESIDENCY REQUIREMENT IS CONSTITUTIONAL, PLTFS WRIT OF MANDAMUS IS DISMD & NAME TO BE REMOVED FROM BALLOT - SGD (CLOSES) | | |
| 08/21/2003 | SUBPOENA TO APPEAR RETURNED | SUBPOENA TO APPEAR RETURNED | | |
| 08/21/2003 | PROOF OF SERVICE | PROOF OF SERVICE | | |
| 08/21/2003 | SERVICE ON COMPLAINT FILED | SERVICE ON COMPLAINT PERS/WARREN ELECTION COMMISSION/8-8-03 | | |
| 08/21/2003 | SERVICE ON COMPLAINT FILED | SERVICE ON COMPLAINT ACK/RICHARD PAUL SULAKA/8-8-03 TRANS OF PROCEEDINGS BFR WARREN ELECTION COMMISSION DTD 8/14/03 R/F ON SHELF TRANS OF PROCEEDINGS BFR WARREN ELECTION COMMISSION DTD 8/14/03 R/F ON SHELF | | |
| 08/25/2003 | COPY OF ORDER FROM COURT OF APPEALS RECEIVED/FILED | COPY OF ORD FRM COURT OF APPEALS R/F | | |
| 09/05/2003 | CLAIM OF APPEAL FILED | CLAIM OF APPEAL $25.00 RCPT #094195 STATEMENT THAT TRANSCRIPTS HAVE BEEN ORDERED | | |
| 09/09/2003 | NOTES | COPY OF SPECIAL MEETING TRANS OF THE WARREN ELECTION COMMISSION DTD 8/7/03 R/F | | |
| 09/09/2003 | PROOF OF SERVICE | PROOF OF SERVICE | | |
| 09/30/2003 | NOTES | NTC FILE TRANS, AFF/MAIL REPORTERS CERT OF ORDER TRANS ON APPEAL MTN TRANS OF 8/18/03, R/F TRANS OF 8/13/03, R/F | | |
| 10/01/2003 | COPY OF ORDER FROM COURT OF APPEALS RECEIVED/FILED | COPY OF ORD FRM COURT OF APPEALS R/F | | |
| 10/20/2003 | NOTES | COPY OF: NOTICE OF HEARING, NOTICE OF SERVICE, PLTFS/APPELLANT'S APPLICATION FOR LEAVE TO APPEAL WITH EXHIBITS AND PROOF OF SERVICE FROM MI SUPREME COURT | | |
| 10/28/2003 | REPORTER'S NOTICE OF FILING TRANSCRIPT; CERTIFICATE OF SERVICE | REPORTER'S NOTICE OF FILING TRANSCRIPT | | |
| 10/28/2003 | REPORTER/RECORDER'S CERTIFICATE OF ORDER OF TRANSCRIPT ON APPEAL | REP/REC CERT OF ORD OF TRANS ON APPEAL | | |
| 10/28/2003 | MOTION: | MOTIONS | | |
| 10/28/2003 | REPORTER'S CERTIFICATE | REPORTER'S CERTIFICATE | | |
| 10/28/2003 | MOTION: | MOTIONS | | |

| Date | Description | Docket Text | Amount Owed | Amount Due |
|------|-------------|-------------|-------------|------------|
| 10/28/2003 | REPORTER'S CERTIFICATE | REPORTER'S CERTIFICATE | | |
| 10/30/2003 | CIRCUIT COURT FILE SENT TO MICHIGAN SUPREME COURT | SENT TO MICHIGAN SUPREME COURT CERT DKT, 1 COMP FILE, 2 TRANS DTD 08/14/03(2) CERT/MAIL RECEPT R/F IN FILE | | |
| 11/07/2003 | CIRCUIT COURT FILE SENT TO MICHIGAN SUPREME COURT | SENT TO MICHIGAN SUPREME COURT TWO HEARING TRANS DATED 8/13/03 AND 8/18/03 AND CERT DCKT | | |
| 11/12/2003 | PROOF OF SERVICE | PROOF OF SERVICE | | |
| 11/13/2003 | NOTES | CERT/MAIL RECPT RETURNED R/F IN FILE | | |
| 02/02/2004 | NOTICE OF HEARING | NOTICE OF HEARING | | |
| 02/02/2004 | APPLICATION FOR LEAVE TO APPEAL | APPLICATION FOR LEAVE TO APPEAL | | |
| 02/02/2004 | PROOF OF SERVICE | PROOF OF SERVICE NOTICE OF SERVICE | | |
| 02/10/2005 | COPY OF ORDER FROM COURT OF APPEALS RECEIVED/FILED | COPY OF ORDER FROM COURT OF APPEALS RECEIVED/FILED | | |
| 03/31/2005 | RETURNED FROM COURT OF APPEALS (LANSING) | RETURNED FROM COURT OF APPEALS DOCKET (2), COPY 1 VOL FILE, TRANS DTD 8/14/03, 8/13/03, 8/18/03 | | |
| 03/31/2005 | COPY OF ORDER FROM COURT OF APPEALS RECEIVED/FILED | COPY OF ORDER FROM COURT OF APPEALS RECEIVED/FILED | | |
| 12/12/2006 | CASELOAD TRANSFERRED | CASELOAD TRANSFERRED The judge was changed from CHRZANOWSKI, MARY A to VIVIANO, DAVID . | | |
| 07/25/2013 | CASELOAD TRANSFERRED | CASELOAD TRANSFERRED The judge was changed from VIVIANO, DAVID F to FAUNCE, JENNIFER . | | |

## Party Information

**BRISSON, GLENN R**
- APPELLANT

- DOB
  - Alias
- DOD
  - **Party Attorney**
    - Attorney
    - KELLY, DANIEL J.
    - Bar Code
    - 41315
- Disposition
- Disp Date

More Party Information

**WARREN ELECTION COMMISSION**
- APPELLEE

- DOB
  - Alias

- ◦
- ◦ DOD
- ◦
- ◦ Disposition
- ◦
- ◦ Disp Date
- ◦

**Party Attorney**
- Attorney
- HACKEL, III, WILLIAM H
- Bar Code
- 39767

More Party Information

**SULAKA, RICHARD PAUL**
**- APPELLEE**

- •
- ◦ DOB
- ◦
- ◦ DOD
- ◦
- ◦ Disposition
- ◦
- ◦ Disp Date
- ◦

Alias

**Party Attorney**
- Attorney
- HACKEL, III, WILLIAM H
- Bar Code
- 39767

More Party Information

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| DISPOSED CONVERSION | 08/18/2003 | FAUNCE, JENNIFER M |